IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ARMANDO JESUS TORRES MEDINA,<br><br>    Petitioner,<br><br>v.<br><br>EVAN TJADEN, Acting Field Office Director, ICE Enforcement and Removal Operations; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; PAMELA J. BONDI, Attorney General of the United States,<br><br>    Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR HABEAS CORPUS**<br><br>Case No. 2:26-cv-00195-JNP<br><br>Chief District Judge Jill N. Parrish |

On March 6, 2026, Petitioner Armando Torres, a Venezuelan national, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. On March 9, Petitioner filed an amended petition as well as an emergency motion to stay transfer during the pendency of the petition. ECF Nos. 15, 10. For the following reasons, the court denies the emergency motion but grants the Amended Petition.

**BACKGROUND**[1]

**I.    Petitioner Armando Torres**

Petitioner is a Venezuelan national currently working as a mechanic in the United States. ECF No. 1 ¶ 1; ECF No. 15 ¶¶ 1, 8. Around three years ago, he entered the United States seeking

---

[1] Petitioner's declarations and the exhibits produced by the parties establish the following background. At oral argument, the parties also agreed that there are no material facts in dispute.

asylum. ECF No. 1 ¶ 2; ECF No. 15 ¶ 2. He did not encounter any immigration officials when entering. ECF No. 15 ¶ 3. Within a year of entering, Petitioner filed an asylum application through a Form I-589 and was granted an employment authorization card. ECF No. 1 ¶ 6; ECF No. 15 ¶ 4; ECF No. 15-1 at 1–2. He was then granted Temporary Protective Status ("TPS"). ECF No. 1 ¶ 7; ECF No. 15 ¶ 5; ECF No. 15-1 at 3. As part of these applications, he reported twice to U.S. Citizenship and Immigration Services ("USCIS") for fingerprinting. ECF No. 15 ¶ 6.

Petitioner's TPS has since expired as of Apil 2, 2025.[2] ECF No. 18 at 2, 4. Petitioner also now faces a pending criminal case arising from an alleged assault and theft that occurred in September 2025. ECF No. 1 ¶ 11; ECF No. 15 ¶ 11. He also has a pending traffic citation. ECF No. 1 ¶ 10; ECF No. 15 ¶ 10. After Petitioner missed hearings relating to his criminal case, a warrant was issued for his arrest. ECF No. 1 ¶ 13; ECF No. 15 ¶ 13; ECF No. 18 at 6. Petitioner was eventually stopped for another traffic violation and was arrested pursuant to the warrant. ECF No. 1 ¶ 14; ECF No. 15 ¶ 14.

At a March 5, 2026 state hearing in his criminal case, Petitioner was ordered released. ECF No. 1 ¶ 15; ECF No. 15 ¶ 15. Petitioner, however, remained in detention at the Utah County Jail pursuant to an Immigration and Customs Enforcement ("ICE") detainer. ECF No. 1 ¶ 17; ECF No. 15 ¶ 17.

On March 6, ICE transported Petitioner from that jail to another detention location. ECF No. 1 ¶ 18; ECF No. 15 ¶ 18. That same day, ICE provided Petitioner with a Notice to Appear ("NTA") (Form I-862) before an immigration judge on March 18, 2026. ECF No. 18 at 6; ECF

---

[2] *Noem v. Nat'l TPS All.*, 606 U.S. ----, 146 S. Ct. 23 (2025) (staying a preliminary order that postponed "the effective date of the Secretary of Homeland Security's decision to remove 'temporary protected status' (TPS) from Venezuelan nationals living in the United States").

No. 18-1 at 1. The NTA states that Petitioner is subject to removal under 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I) for (1) being a noncitizen present in the United States without being admitted or for arriving in the United States at any time or place other than as designated by the Attorney General, and for (2) being an immigrant not in possession of a valid unexpired immigrant visa or other valid entry document. ECF No. 18 at 6–7; ECF No. 18-1 at 4. ICE officers also allegedly told Petitioner that he was not eligible for a bond or a bond hearing with an immigration judge. ECF No. 15 ¶ 22. After this meeting, ICE transported Petitioner to Tooele County Jail. ECF No. 15 ¶ 24; ECF No. 18 at 7.

That same day, Petitioner filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. On March 9, he filed an amended petition as well as an emergency motion to stay transfer during the pendency of the petition. ECF Nos. 15, 10. In his amended petition, Petitioner argues that he was improperly detained by ICE under the mandatory detention provisions of 8 U.S.C. § 1225. Petitioner asks the court to order that Respondents make an initial custody determination, that Respondents inform Petitioner of his rights under *Bautista*,[3] and that Petitioner is entitled to a bond redetermination hearing with an immigration judge if ICE exercises its discretion to continue to detain him. ECF No. 15 at 1–2, 5.

---

[3] In *Maldonado Bautista v. Santacruz*, the Central District of California ruled that 8 U.S.C. § 1225(b)(2) did not apply to noncitizens arrested within the interior of the country after unlawful entry and certified a class of noncitizens who were present without lawful status, entered without inspection, were not apprehended upon arrival, and were not subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time of their initial custody determination. *Bautista v. Santacruz*, No. 5:25-CV-01873, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025); *Bautista v. Santacruz*, No. 5:25-CV-01873, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). The Ninth Circuit has since limited application of the class to the Central District of California. *Maldonado Bautista v. U.S. Dep't of Homeland Sec.*, No. 26-1044 (9th Cir. Mar. 6, 2026).

The court issued an order to show cause to Respondents on March 9. ECF No. 6. Respondents state that ICE is detaining Petitioner under 8 U.S.C. § 1225(b)(2) for being an "applicant for admission" who was not "clearly and beyond a doubt entitled to be admitted." ECF No. 18 at 2.

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."[4] 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating his custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.").

## ANALYSIS

The petition before the court is the court's first opportunity to address a legal issue that has been extensively litigated throughout the country in hundreds of cases. The central question is whether 8 U.S.C. § 1225(b)(2) imposes mandatory detention on noncitizens who are present in the

---

[4] Respondents do not challenge the court's jurisdiction to hear this matter. ECF No. 18 at 8 n.11; *see United States v. Mine Workers of Am.*, 330 U.S. 258, 293 (1947) (holding that district courts may preserve existing conditions to determine their authority to grant injunctive relief).

United States without admission irrespective of how long they have been in the United States. *See* ECF No. 18 at 8–9. The federal government, in a change of policy that departs from decades of former practice, argues § 1225(b)(2) does mandate such detention. Petitioner argues otherwise, stating that the government's new interpretation of § 1225 is unlawful.

The majority of lower courts to have addressed this issue agree that the government's new policy is indeed unlawful. Despite this wealth of case law, no binding precedent currently dictates a result within this circuit. Indeed, only the Fifth Circuit has reached the issue on its merits, though the Seventh Circuit has discussed the topic in a preliminary relief setting. *Contrast Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026) (finding the government's new interpretation is lawful), *with Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (finding the government's new interpretation is likely unlawful).

This issue has also been previously addressed within this district, leading to a split of opinion. *Contrast Tanchez v. Noem*, No. 2:25-CV-1150, 2026 WL 125184, at *1 (D. Utah Jan. 16, 2026) (finding the new interpretation unlawful), and *Johan Andres Velasquez Montillo, v. Nate Brooksby, et al.*, No. 4:26-CV-00018-DN-PK, 2026 WL 592355, at *7 (D. Utah Mar. 3, 2026) (finding the new interpretation unlawful), *with Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300, at *7 (D. Utah Feb. 12, 2026) (finding the new interpretation lawful).

In any case, while the court notes the weight of authorities has ruled against the government's interpretation, it considers the parties' arguments as a matter of first impression. Indeed, as courts continue to address the extensive case law developing around this issue, some have wisely noted that "the persuasiveness of nonbinding precedent turns on quality, not quantity." *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300, at *5 (D. Utah Feb. 12, 2026). The court in this case, however, finds that quantity mirrors quality, with the court's own determination

of the issue aligning with the majority of courts in ruling that the government's interpretation of § 1225 is unlawful.[5]

Respondents raise three primary arguments in support of their interpretation of § 1225: (1) the statute is clear on its face; (2) prior practice does not change the law; and (3) the government's interpretation of § 1225(b)(2) aligns with the goals of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. The court addresses each in turn.

## I.    Statutory Text

As stated, Respondents argue that § 1225 is clear on its face and supports their expansive interpretation of its mandatory detention scheme. Before the court further details Respondents' and Petitioner's competing views of the statute, the court outlines its general provisions.

As a preliminary matter, the court is asked here to interpret portions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, which was enacted in 1952. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, which delineated three detention-related provisions. Only the first two are relevant in this case: 8 U.S.C. §§ 1225 and 1226.[6]

---

[5] Petitioner also raises a Due Process claim and an Administrative Procedures Act claim. Because the court finds that Petitioner's detention under § 1225(b)(2) is unlawful under the Immigration and Nationality Act, the court need not address these other arguments. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) (noting that "a longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"). However, the court notes that many other courts have raised credible constitutional concerns relating to Respondents' current application of § 1225(b)(2). *See, e.g.*, *Tanchez*, No. 2:25-CV-1150, 2026 WL 125184, at *14–16 (noting potential Fourth Amendment and Due Process concerns, even when considering the Supreme Court's holding in *Demore v. Kim*).

[6] When discussing provisions of the INA, courts often oscillate between referring to them as they are defined in the INA or as they are labeled in the U.S. Code. For clarity's sake, the court refers

Section 1225 begins with subpart "(a) Inspection," by stating that a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)" shall be deemed an "applicant for admission." 8 U.S.C. § 1225(a)(1). It then states that all noncitizens "who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3).

Section 1225(b), "Inspection of Applicants for Admission," follows next, authorizing the detention of certain noncitizens. Section 1225(b)(1) describes the expedited removal process. It states that "[i]f an immigration officer determines that [a noncitizen] . . . who is arriving in the United States or is described in clause (iii)[7] is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the [noncitizen] removed from the United States *without further hearing or review* unless the [noncitizen] indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added). Section 1182(a)(6)(C) refers to a noncitizen "who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States." 8 U.S.C. § 1182(a)(6)(C). Section 1182(a)(7) refers to noncitizens who do not meet the documentation requirements for admission. 8 U.S.C. § 1182(a)(7).

---

to the relevant provisions here as they are defined in the U.S. Code. Thus, 8 U.S.C. § 1225 (as opposed to INA § 235), § 1226 (as opposed to INA § 236), and so on.

[7] Clause (iii) describes noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

Section 1225(b)(2), "Inspection of Other Aliens," applies to some noncitizens not covered by § 1225(b)(1) and requires mandatory detention. It states that "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall* be detained for a proceeding under section 1229a of this title." 8 U.S.C. 1225(b)(2)(A) (emphasis added). Section 1229a describes the statutory process and requirements for removal proceedings under the INA.[8] 8 U.S.C. § 1229a.

Section 1226 relates to the "[a]pprehension and detention" of noncitizens. 8 U.S.C. § 1226. Section 1226(a) states that "[o]n a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). It continues to state that the Attorney General may continue to detain the noncitizen or may release the noncitizen on bond or conditional parole. 8 U.S.C. §§ 1226(a)(1)–(2). Those detained under Section 1226(a) may request a custody redetermination hearing in front an immigration judge. 8 C.F.R. § 1003.19(a).

Section 1226 also contains a mandatory detention provision for certain noncitizens, however. Section 1226(c), "Detention of Criminal Aliens," states that the "Attorney General shall take into custody any [noncitizen] who" fits into various delineated categories. 8 U.S.C. § 1226(c)(1). The categories include buckets of inadmissibility under § 1182 (*see* §§ 1226(c)(1)(A),

---

[8] In his reply brief, Petitioner switches course and argues that "this isn't a *Hurtado* case at all," referencing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), in which the Board of Immigration Appeals agreed with the government's new interpretation of Section 1225(b)(2)'s scope. ECF No. 25 at 1. He argues that because Respondents have initiated removal proceedings under § 1229a, "the proper construction of § 1225 is beside the point." ECF No. 25 at 1. This is a fundamental misunderstanding of the statute since noncitizens subject to mandatory detention under § 1225(b)(2) also enter removal proceedings under § 1229a, as the statute clearly states.

(D), (E)) and buckets of deportability under § 1227 (*see* §§ 1226(c)(1)(B), (C), (D)). Section 1226(c)(1)(E) was added just last year through the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025). It requires mandatory detention "for an individual who is inadmissible under either § 1182(a)(6)(A) (for entering without inspection), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) *and* who has been arrested for, charged with, or convicted of certain crimes." *Tanchez v. Noem*, No. 2:25-CV-1150, 2026 WL 125184, at *6 (D. Utah Jan. 16, 2026) (underlined text changed to italics).

As the Supreme Court in *Jennings v. Rodriguez* summarized: "U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

The applicability of the mandatory detention scheme of § 1225(b)(2) or the discretionary detention scheme of § 1226(a) is thus dispositive in the case at hand. Respondents argue that Petitioner is an applicant for admission seeking admission who is "not clearly and beyond a doubt entitled to be admitted to the United States." ECF No. 18 at 2. If that is correct, mandatory detention would apply. Petitioner argues, in contrast, that because he was already in the country, his detention is discretionary under § 1226(a).[9]

---

[9] The detention schemes of Section 1225(b)(2) and Section 1226(a) are mutually exclusive. If detention is mandatory, the Attorney General has no discretion to order release, barring limited exceptions not relevant here under 8 U.S.C. § 118(d)(5)(A). *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484–85 (S.D.N.Y. 2025). The Secretary of Homeland Security may grant parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . ." 8 U.S.C. § 1182(d)(5)(A).

Under the plain text of the INA, the court finds that § 1226(a) applies and § 1225(b)(2) does not apply. Section 1225(b)(2)(A) states that mandatory detention applies if three criteria are met: (1) the noncitizen is an "applicant for admission," (2) the noncitizen is "seeking admission," and (3) the noncitizen "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

Taking the statute at face value, Petitioner is indeed an applicant for admission. He is a noncitizen "present in the United States who has not been admitted." 8 U.S.C § 1225(a)(1). However, the Petitioner is not "seeking admission" into the United States.[10] That is not to say he has been admitted, as defined in 8 U.S.C. § 1101(a)(13)(A) (defining admission or admitted as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer"). Rather, it reflects the reality that Petitioner has been in the United States for over two years and is not actively seeking admission. Thus, § 1225(b)(2) does not apply to his case.

As other courts have noted, this interpretation of the statute is supported by the statute's active, present participle terminology. Section 1225(b)(2) applies in cases where there is an "examining immigration officer" interacting with a noncitizen "seeking admission." 8 U.S.C. § 1225(b)(2). "In general, [a] present participle is used to signal present and continuing action." *Francisco T. v. Bondi*, No. 25-cv-3219, 2025 WL 3490809, at *5 (D. Minn. Sept. 5, 2025) (quoting *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1307 (11th Cir. 2022)). "These active verbs suggest a moment in time when a noncitizen is crossing or has recently crossed a

---

[10] Notably, the Notice to Appear from March 6, 2026, categorizes Petitioner as a noncitizen "present in the United States who has not been admitted or paroled," and not as "an arriving [noncitizen]." *See* ECF No. 18-1 at 1.

border, not an indefinite status that applies whenever a noncitizen charged with inadmissibility encounters an immigration official." *Tanchez*, No. 2:25-CV-1150, 2026 WL 125184, at *8.

This conception is bolstered by the fact that this language is couched within a section dealing with "inspection," a term which has historically been connected to the border context in the INA. *See id.* (citing *Make the Road N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *2 (D.C. Cir. Nov. 22, 2025)); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 513 (5th Cir. 2026) (Douglas, J., dissenting) ("Section 1225's title refers to 'Inspection by immigration officers' and 'arriving aliens,' and § 1225 is replete with references to arrival and inspection. Conversely, § 1226 is titled 'Apprehension and detention of aliens,' and features none of this language.").

But Respondents argue that the plain text of the statute only supports a different interpretation. In their view, Petitioner is an "applicant for admission" and is thus necessarily still "seeking admission," allowing detention under § 1225(b)(2). ECF No. 18 at 2, 14. As they view it, all applicants for admission are always seeking admission. In support of this position, Respondents almost exclusively rely on the Fifth Circuit's recent opinion in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) and Judge Nielsen's recent opinion from the District of Utah, *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300 (D. Utah Feb. 12, 2026). *See* ECF No. 18 at 9 ("The United States contends that this Court should follow *Buenrostro* and *Cisneros*."). The court accordingly addresses in detail the many arguments considered in both opinions, though neither are binding on this court. As will be detailed, the court finds neither opinion persuasive.

The first textual argument made by the Fifth Circuit is that, using ordinary meaning, "[w]hen a person applies for something, they are necessarily seeking it." *Buenrostro-Mendez*, 166

11

F.4th at 502; *see id.* ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'").[11]

This court disagrees, however, that the ordinary reading of the terms renders the two provisions equivalent. Look to the college admissions example used by the Fifth Circuit, in which it states an applicant "would ordinarily be understood to be seeking admission as long as her application is pending." *Id.* at 502. But it is not difficult for this court to imagine a situation in which that applicant is no longer seeking admission. For example, if that applicant had been accepted into another program that she prefers, she may still be an applicant for the first program, but she is no longer *seeking* admission. And the Fifth Circuit's analogy fails at an even more fundamental level. As the District of New Mexico in *Sanchez v. Noem* explains, the college applicant analogy presumes that the college applicant took an affirmative step (by clicking submit on the application), whereas an "applicant for admission" in the INA context automatically becomes an applicant by simply entering the United States. *Sanchez v. Noem*, No. 2:25-CV-01232-KWR-KBM, 2026 WL 473094, at *6 n.4 (D.N.M. Feb. 19, 2026). Here, "Petitioner is positioned much more closely to the unadmitted individual sitting in a lecture hall unbeknownst to the administration—hardly a college applicant." *Id.*

But the court's analysis does not hinge on finding the right analogy. Further supporting the court's understanding is that equating the requirements of subsections (1) and (2) would render subsection (2) redundant. While the Fifth Circuit remarked that apparent redundancies do not give courts the license to rewrite "another portion of the statute contrary to its text," no revisions to the

---

[11] The Fifth Circuit cited also to a BIA decision, *Matter of Lemus-Losa*, which held the same view. 25 I&N Dec. 734, 743 (2012). The BIA's decisions are of course not binding on federal district courts.

text are needed here. *Buenrostro-Mendez*, 166 F.4th at 503 quoting (*Barton v. Barr*, 590 U.S. 222, 239 (2020)). The terms are simply not redundant based on a plain reading of the text. And as the dissent in *Buenrostro-Mendez* highlighted, "[i]t is . . . a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." *Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) (quoting *Williams v. Taylor*, 529 U.S. 362, 404, (2000)); *see Corley v. United States*, 556 U.S. 303, 314 (2009) (stating that "one of the most basic interpretive canons" is "that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant'" (citation modified)).

The Fifth Circuit opinion also fails to recognize that while "applicant for admission" is a defined term of art in the statute, "seeking admission" is not. *See* 8 U.S.C. § 1225(a)(1); *Sanchez*, No. 2:25-CV-01232-KWR-KBM, 2026 WL 473094, at *5 n.3 ("The Fifth Circuit reduces the technical phrases 'applicant for admission' and 'admission' to the ordinary word 'apply.' Only after the statutorily defined phrases are substituted for the ordinary term does the comparing of definitions commence. Not only does this substitution not afford the appropriate weight to the statutory definitions of 'applicant for admission' and 'admission,' but such substitution damages the very foundation of the court's textual analysis."). While Congress may have defined the former broadly, the ordinary meaning of the latter controls. The ordinary meaning of such active language signals the statute is not discussing a noncitizen already residing in the country. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("But it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or

who arrives in the United States.' 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are 'seeking admission' within the definition but elected not to do so.").

Moreover, as other courts have noted, while "seeking admission" is not defined, "admission" is defined. *Sanchez*, No. 2:25-CV-01232-KWR-KBM, 2026 WL 473094, at *5 ("'Admission' is statutorily defined as 'the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.' 8 U.S.C. § 1101(a)(13)(A)."). The ordinary meaning of "entry" within that definition thus signals that "admission" under § 1225(b)(2) "refers to a noncitizen's lawful act of physically entering the United States after inspection and authorization by an immigration officer." *Id.* Combined with the active terminology of "seeking," the term "seeking admission" most clearly applies to "noncitizens who are *presently* trying to lawfully and *physically enter* the United States." *Id.* at *6 (emphasis added).

The Fifth Circuit responds that various other provisions within § 1225 imply that the two terms are substitutes. *Buenrostro-Mendez*, 166 F.4th at 503. For example, it points to Section 1225(a)(5), which provides that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States . . . ." 8 U.S.C. § 1225(a)(5). But all this provision does is further cement that § 1225 is focused on noncitizens who are actively seeking admission. Here, a noncitizen who is seeking admission (who, again, would be considered part of the broader "applicant for admission" group) may be required to respond to questions from an immigration officer under oath.

The Fifth Circuit also highlights Section 1225(a)(3), which provides that "[a]ll [noncitizens] (including [noncitizen] crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by

14

immigration officers." 8 U.S.C. § 1225(a)(3). According to the Fifth Circuit, the use of "or otherwise" suggests that an applicant for admission is actually a subset of those seeking admission. *Buenrostro-Mendez*, 166 F.4th at 503. But this assertion falters because the implications of "or otherwise" differ based on sentence structure. *See* Merriam Webster Online, https://www.merriam-webster.com/dictionary/or%20otherwise (stating "or otherwise" is "used to refer to something that is different from something already mentioned"). If "or otherwise" fell within a list of like terms (such as "to bike, jog, or otherwise exercise" as the government in *Buenrostro-Mendez* offered), the court would be inclined to agree with the Fifth Circuit. However, as used in the statute, "or otherwise" sets apart additional categories of noncitizens from the previously mentioned "applicants for admission" to whom the statute applies, including those "seeking admission or readmission to" the United States or those "seeking . . . transit through the United States." 8 U.S.C. § 1225(a)(3).

Finally, some have argued in support of the government's interpretation that other portions of the statute explicitly use the term "arriving alien," signaling that Congress at times intentionally limited the reach of the statute to only arriving noncitizens. *See, e.g.*, 8 U.S.C. § 1225(a)(2) ("An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer."). However, the fact that § 1225(b)(2) uses the term "applicant for admission" rather than the term "arriving alien" does not resolve the specific question at hand. As some courts have noted, it is entirely plausible that Congress aimed to give border agents more temporal and geographic flexibility when it came to detaining noncitizens encountered at the border. *See Tanchez*, No. 2:25-CV-1150, 2026 WL 125184, at *7. But in any case, this broader terminology was nevertheless limited by the inclusion of additional language—"seeking admission"—cabining the reach to the border context. *See*

15

*Buenrostro-Mendez*, 166 F.4th at 514 (Douglas, J., dissenting) ("'[S]eeking admission' is therefore not a throwaway extra phrase, but rather the modern statute's equivalent of the key term limiting its reach to noncitizens 'arriving' at the border.").

At bottom, the Fifth Circuit majority appears perplexed that Congress could have defined "applicant for admission" within § 1225 to be broad, but then could have also narrowed the applicability of much of the rest of § 1225 to apply to a subset of those applicants—those seeking admission. *See Id.* at 504. But this actually makes sense. It appears entirely plausible that Congress set out a broad definition of "applicant for admission" (to, in part, remove historic disparities in the removal proceeding process, as discussed below) before continuing to define the rules that apply to a subset of that group (those seeking admission). It in fact makes so much sense that this understanding was the status quo for decades.

## II. Statutory Structure

The structure of the Immigration and Nationality Act ("INA") is also relevant to the court's inquiry. *See Jennings v. Rodriguez*, 583 U.S. 281, 301–02 (2018) (considering the structure of the INA in determining meaning). The court finds it also supports Petitioner's position.

Most relevant here is § 1226, which in part sets out the discretionary detention system. Section 1226(c), amended just last year through the Laken Riley Act, states that certain noncitizens subject to § 1226 are nevertheless subject to mandatory detention. For example, § 1226(c)(1)(E) states that for those noncitizens inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), or 1182(a)(7), detention is mandatory *if they are also* charged with, arrested for, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). If noncitizens present without admission were already subject to mandatory detention through § 1225(b)(2), the newly added crime requirement of § 1226(c)(1)(E) would be redundant. *See Santos M.C. v. Olson*, No. 25-CV-4264, 2025 WL 3281787, at *3 (D.

16

Minn. Nov. 25, 2025) ("If the government is correct, there was no reason for Congress to amend § 1226 in 2025."). Moreover, § 1226(c) in general would appear largely redundant, if mandatory detention applies to as broad a scope through § 1225(b)(2) as Respondents assert.

This alleged redundancy is not without consequence. *See Barton v. Barr*, 590 U.S. 222, 239 (2020) (noting redundancies "are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication"). The application of § 1225 instead of § 1226 has tangible consequences for noncitizens. The parole provisions of § 1882(d)(5), for example, only apply to those detained pursuant to § 1225. This reality appears to reflect that §§ 1225 and 1226 are indeed different detention schemes that apply to different groups of noncitizens. *Carbajal v. Wimmer*, No. 2:26-CV-00093, 2026 WL 353510, at 4 (D. Utah Feb. 9, 2026) (noting "the detention schemes under § 1225 and § 1226 are distinct, with different advantages and disadvantages").

The Fifth Circuit in *Buenrostro-Mendez* replies that § 1226(a) does independent work. 166 F.4th 494, 504 (5th Cir. 2026). The court does not disagree. As the Fifth Circuit states, only "§ 1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error." *Id.* at 504–05. It also notes, as this court noted above, that those mandatorily detained under § 1226(c) do not have the option of parole available to those detained under § 1225(b)(2). *Id.* at 505. But while the Fifth Circuit's reasoning explains why § 1226 and the Laken Riley Act are not *completely* redundant, that reasoning is nevertheless less convincing compared to the alternative readily available: § 1225(b)(2) and § 1226 are not redundant at all because they apply to different groups of noncitizens. *See id.* at 512 (Douglas, J., dissenting) ("This is not a mere matter of some overlap at

17

the edges; rather, the government's reading takes a sledgehammer to the statutes Congress wrote, including laws it passed just over a year ago."). If Respondents' position is correct, Congress could have in a more straightforward fashion eliminated the parole option for those noncitizens directly in § 1225 or in § 1882. *Id.*

## III.    The Supreme Court's Treatment of the Issue

Considering the text and structure of the statute, the court finds that § 1226 applies to Petitioner. The court's holding is also supported by the Supreme Court's treatment of the relevant statutes, the government's prior practice, and the relevant legislative history. The court first addresses the Supreme Court's precedent.

The court notes at the outset that the Supreme Court has not considered this issue directly, but both sides attempt to glean the Court's likely position from prior precedent. While the court is skeptical of the fruitfulness of this endeavor, it nevertheless notes that the Supreme Court has largely appeared to assume Petitioner's position: that § 1226 applies to those already in the country.

In 2018, the Court considered both § 1225 and § 1226 in *Jennings v. Rodriguez*. 583 U.S. 281 (2018). In that case, the Court weighed whether the detention provisions in §§ 1225 and 1226 gave rise to a right to periodic bond hearings during the course of a noncitizen's detention. *Id.* at 286. Though dicta, the Court explicitly defined § 1225 to apply to those "seeking admission into the county" and § 1226 to apply to those "already in the country." *Id.* at 289.

The Fifth Circuit responds that just because the Court stated that § 1226 applied to noncitizens in the United States, it does not preclude the possibility that § 1225 also applies to such noncitizens. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 505–06 (5th Cir. 2026). As the Fifth Circuit stated, holding otherwise would entail "the exact sort of language-parsing inquiry that the Supreme Court has cautioned lower courts against." *Id*. at 505–06 (citing *Nat'l Pork Producers*

18

*Council v. Ross*, 598 U.S. 356, 373–74 (2023)). But it is not "language parsing" to take the Supreme Court at its word. While the Court did not explicitly preclude § 1225 from applying to those already in the country, it did clearly delineate that § 1225(b) applied to noncitizens seeking admission and that § 1226 applied to noncitizens already in the country. *Jennings*, 583 U.S. at 289.

The Fifth Circuit further argues that, if it were to engage in the language-parsing it reproves, other language in *Jennings* supports Respondents' position. *Buenrostro-Mendez*, 166 F.4th at 506. In *Jennings*, the Court states that "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297. The Fifth Circuit argues that this line implies that "seeking entry" is thus equated with "applicant for admission." *See Buenrostro-Mendez*, 166 F.4th at 506. But Respondents must prove here that all applicants for admission are seeking admission, not that all those seeking admission are applicants for admission. The quoted line supports the latter, which does not push forward Respondent's view in any meaningful way. In fact, Petitioner appears to agree that those seeking admission *are* applicants for admission, but a narrower class.

Ultimately, what is more consistent throughout the Court's opinion, and its jurisprudence in general, is a delineation between § 1225 applying to those at the border and § 1226 applying to those "already present in the United States." *Jennings*, 583 U.S. at 303; *see Kevin Vasquez Pacheco, Petitioner, v. Brandon Crowley, Jail Commander of the Clay Cnty. Det. Ctr., Respondent.*, No. 1:26-CV-02052, 2026 WL 658890, at *3 (N.D. Ill. Mar. 9, 2026) ("It is true that, like the observations in *Jennings*, [various Supreme Court opinions] do not directly interpret all the key terms in dispute here—the issue was not presented in those cases—but they reflect the Supreme Court's repeated understanding of the statutes at issue.").

Further exemplifying this point is the Supreme Court's ruling in *Department of Homeland Security v. Thuraissigiam*. 591 U.S. 103 (2020); *see Tanchez v. Noem*, No. 2:25-CV-1150, 2026 WL 125184, at *13 (D. Utah Jan. 16, 2026) (reading *Thuraissigiam* to support Petitioner's position). In that case, the Court considered the constitutionality of § 1252(e)(2), which limits the ability of asylum seekers to seek review through the federal habeas statute. *Id.* at 106–07. Within its discussion, the Court again assumed that for a noncitizen present in that United States who had not been admitted, application of § 1226 was appropriate. *Id.* at 119. As it stated, "[i]t is not disputed that [Thuraissigiam] was apprehended in the very act of attempting to enter this country; that he is inadmissible because he lacks an entry document . . . ; and that, under these circumstances, his case qualifies for the expedited review process, including '[m]andatory detention' during his credible-fear review . . . ." *Id.* at 118-19. The Court here refers to Section 1225(b) when discussing the expedited review process and mandatory detention for a noncitizen caught at the border. It continues: "Moreover, simply releasing him would not provide the right to stay in the country that his petition ultimately seeks. Without a change in status, he would remain subject to arrest, detention, and removal." *Id.* at 119. Here, the court cited to § 1226(a), ostensibly reflecting its view that for noncitizens already present in the United States, detention under § 1226 applies.

## IV.    Prior Practice

Beyond Supreme Court precedent, the government's treatment of these statutes is also informative. From 1997 to 2025, the Department of Homeland Security ("DHS") adhered to the conventional understanding of the applicability of §§ 1225(b)(2) and 1226(a). Conventional in this sense is that noncitizens arrested when already present in the United States were eligible for bond

and were able to challenge their custody determination in front of an immigration judge. *See Tanchez v. Noem*, No. 2:25-CV-1150, 2026 WL 125184, at *3 (D. Utah Jan. 16, 2026).

In July 2025, DHS released new guidance to its employees, stating that it had "revisited its legal position on detention and release authorities" and determined that "section 235 of the Immigration and Nationality Act (INA), rather than section 236, is the applicable immigration detention authority for all applicants for admission." *Id.* (quoting Interim Guidance, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX). Later, in September 2025, the Board of Immigration Appeals adopted the position as laid out in the new guidance. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

The court, of course, "need not . . . defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024). "[T]he judgment of the Executive Branch may help inform [the] inquiry," but an agency's expertise only provides the "power to persuade," rather than any "power to control." *Id.* at 413, 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The Supreme Court has made clear, however, "'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'" *Loper Bright*, 603 U.S. at 386 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)) (citation modified).

Like many other courts, this court credits DHS's longstanding and previously consistent practice in the court's determination of what the law is. *See, e.g.*, *Tanchez*, No. 2:25-CV-1150, 2026 WL 125184, at *12–13.

To be sure, however, the prior practice provides strong, though not exclusive, support for Petitioner's position. The Fifth Circuit in *Buenrostro-Mendez* highlights an early regulation that signaled § 1225(b)(2) applied to unadmitted noncitizens present in the country. *See Buenrostro-*

21

*Mendez v. Bondi*, 166 F.4th 494, 507 (5th Cir. 2026). Specifically, 8 C.F.R. § 235.3(b)(1)(ii) provided that:

> An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act.

8 C.F.R. § 235.3(b)(1)(ii). But this regulation is within a broader set of "expedited removal" provisions and is limited to noncitizens "who are inadmissible specifically because they misrepresented material facts or lack valid documentation, 8 U.S.C. § 1182(a)(6)(C), (a)(7), not to aliens who merely were present in the country without being admitted or paroled, *id.* § 1182(a)(6)(A)." *Kevin Vasquez Pacheco, Petitioner, v. Brandon Crowley, Jail Commander of the Clay Cnty. Det. Ctr., Respondent.*, No. 1:26-CV-02052, 2026 WL 658890, at *4 n.7 (N.D. Ill. Mar. 9, 2026). In any case, in response to comments relating to the publication of the interim rules that included § 235.3(b)(1)(ii), the former Immigration and Naturalization Service and the Executive Office for Immigration Review stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997); 62 Fed. Reg. 10312, 10355. Ultimately, the court considers this long, and only minorly checkered, history as persuasive though not controlling. *Loper Bright Enterprises v. Raimondo*, 6043 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority . . . .").

## V.    Legislative History

Proponents on both sides of the issue have also relied heavily on murky legislative history relating to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act

("IIRIRA"). This is because IIRIRA attempted to address apparent inequities in the removal process that existed between those who attempted to enter lawfully and those who did not. As the court in *Tanchez* summarized:

> Prior to the enactment of IIRIRA, there were two distinct types of proceedings in which noncitizens could be denied entry or removed from the United States: deportation hearings and exclusion hearings. *Landon v. Plasencia*, 459 U.S. 21, 25 (1982). Deportation hearings were the "usual means of proceedings against an alien already physically in the United States," whereas exclusion hearings were the "usual means of proceeding against an alien outside the United States seeking admission." *Id.* The distinction between the two proceedings was important because "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." *Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010). For a noncitizen subject to a deportation proceeding, these procedural and substantive rights included, in most cases: 1) seven days' notice of the charges; 2) the opportunity for an appeal to the Court of Appeals; 3) the right to designate the country of deportation; 4) the right to depart voluntarily; and 5) the right to seek suspension of deportation. *Landon*, 459 U.S. at 26–27. Because access to these substantive rights hinged on the physical presence of a noncitizen within the United States, the pre-IIRIRA framework "created an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (citations omitted).

No. 2:25-CV-1150, 2026 WL 125184, at \*10 (D. Utah Jan. 16, 2026).

IIRIRA, especially through the definition of "applicant for admission" in Section 1225(a)(1), equalized much of the disparity by "ensur[ing] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA . . . ." *Torres*, 976 F.3d at 928. Some legislative history supports this overarching goal of IIRIRA. *See* H.R. Rep. 104-469, pt. 1, at 225 (1996) (explaining that § 1225(a)(1) "[wa]s intended to replace certain aspects of the current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and

privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry").

But the argument that the conventional distinctions between §§ 1225 and 1226 contravene this purpose misses the mark in multiple ways. First, while privileges arising under § Section 1225 and § 1226 do indeed differ, the qualitative nature of these differences does not necessarily make § 1226 the more forgiving provision. *See Tanchez*, No. 2:25-CV-1150, 2026 WL 125184, at *11 (describing how parole under § 1185(d)(5), available only through § 1225, provides greater rights to work or apply for adjustment of status). Second, IIRIRA *did* achieve a significant level of success in equalizing any differences that arose from physical presence during removal proceedings. *Id.* (citing *Torres*, 976 F.3d at 928); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 517 (5th Cir. 2026) (Douglas, J., dissenting) (noting IIRIRA "accomplished by ample other means" this goal). Whether § 1225(b)(2) or § 1226(a) applies, noncitizens now face the same procedures and burden of proof in removal proceedings pursuant to § 1229a.

Third, and perhaps most importantly, the detention process implicates different considerations than the removal process, constitutional and otherwise. The congressional goal of equalizing disparities within the removal process therefore does not necessarily translate to the INA's detention schemes. When it comes to detention, the border vs. interior distinction takes on added relevance. The mandatory detention of the millions of noncitizens living within the country would cause a greater deal of upheaval than the detention of those who only recently crossed, for example. *Rodriguez v. Bostock*, No. 3:25-cv-5240-TMC, 2025 WL 2782499, at *1332–33 (W.D. Wash. Sept. 30, 2025). More fundamentally, it is abundantly clear why Congress would create a system in which those lawfully seeking admission into the country do not benefit from the potential for bond while those in the interior would. "[G]overnment intrusions have always been tolerated

at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 520 (5th Cir. 2026) (Douglas, J., dissenting); *see Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (internal citations removed)).

Furthermore, in passing IIRIRA and § 1226(a), Congress also signaled that it aimed to "restate[] the current provisions in section [1252(a)] regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229 (1996); *see also* H.R. Rep. No. 104-828, at 209 (1996) (Conf. Rep.) ("New section [1225(b)] establishes new procedures for the inspection and in some cases removal of aliens arriving in the United States."). Section 1252(a) was § 1226(a)'s predecessor and similarly allowed for discretionary detention. Congress, it seems, could have accomplished multiple goals in passing IIRIRA.

Petitioner's position is further supported by differences in the implementation of §§ 1225(b)(2) and 1226(c). When Congress passed § 1226(c), it estimated that 45,000 additional noncitizens would need to be detained. *See* H.R. Rep. No. 104-469, pt. 1, at 118, 120, 123 (1996). When passing § 1226(c), Congress also included a provision that allowed delaying implementation

25

for two years. IIRIRA § 303(b), 110 Stat. 3009-586 to 3009-587. While it may not be fruitful to speculate as to the exact reason the delay provision was included, it is worth noting that when Congress passed § 1225(b)(2), it did not include any delay provision, even if that provision in Respondents' view would mandate detention for a far larger number of noncitizens. *See* H.R. Rep. No. 104-469, pt. 1, at 111 (1996) (estimating that around two million noncitizens who had entered without inspection were present in the United States around IIRIRA's enactment); *see Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.")

This is not the court attempting to adopt the interpretation "that produces the least mischief." *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300, at *5 (D. Utah Feb. 12, 2026) (quoting *Lewis v. City of Chicago*, 560 U.S. 205, 217 (2010)). Rather, this is simply an acknowledgement that if Congress meant to create the statutory basis for the "largest detention initiative in American history," it would have done so more explicitly. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 509 (5th Cir. 2026) (Douglas, J., dissenting).

Indeed, as the dissent in *Buenrostro-Mendez* convincingly argues, "an interpreter should typically greet an agency's claim to extravagant statutory power with at least some measure of skepticism.' 'Extraordinary grants of . . . authority are rarely accomplished through modest words, vague terms, or subtle device[s].'" *Id.* at 515 (Douglas, J., dissenting) (quoting *Biden v. Nebraska,* 600 U.S. 477, 516 (2023), and  *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 723 (2022)) (citation modified). "A longstanding 'want of assertion of power by those who presumably would be alert to exercise it' may provide some clue that the power was never conferred." *Buenrostro-Mendez*, 166 F.4th at 515 (Douglas, J., dissenting) (quoting *Nebraska*, 600 U.S. at 519 (Barrett, J., concurring)). If Congress indeed did believe decades of executive practice was violating the law

26

as it was intended to be interpreted, it would be an "odd failure" for Congress to have never objected to such behavior. *Buenrostro-Mendez*, 166 F.4th at 515 (Douglas, J., dissenting); *see Fed. Deposit Ins. Corp. v. Phila. Gear Corp.*, 476 U.S. 426, 437 (1986) (noting that "congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress").

## VI.    Remedy

Because the court finds that Respondents are unlawfully detaining Petitioner under § 1225(b)(2), Petitioner has met his burden. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."). The court thus orders that Respondents must provide Petitioner a bond hearing before an immigration judge under 8 U.S.C. § 1226(a).

The court, however, denies Petitioner's emergency motion, which seeks to prevent his transfer out of the District of Utah and to prevent his removal while the petition is pending. ECF No. 10. The court's prior Order to Show Cause already prevents Respondents from removing Petitioner out of the country and also requires Respondents to keep Petitioner in a facility in which Petitioner is able to attend any hearings in-person. ECF No. 6. The court declines to require Petitioner to be housed within this district; given current contractual limitations, Respondents are not able to detain a detainee in local facilities for longer than 72 hours. *Tanchez v. Noem*, No. 2:25-CV-1150, 2026 WL 125184, at *2 (D. Utah Jan. 16, 2026).

## CONCLUSION AND ORDER

For the foregoing reasons, the court ORDERS as follows:

1.  Mr. Torres' petition for a writ of habeas corpus is GRANTED. ECF No. 1.

2.  Mr. Torres' emergency motion is DENIED. ECF No. 10.

3. The respondents are ORDERED to provide Mr. Torres with a bond hearing under 8 U.S.C. § 1226(a) within 7 days from the date of this order.

4. The respondents are ENJOINED from denying bond to Mr. Torres on the basis that he is detained under 8 U.S.C. § 1225(b)(2).

5. The respondents are further ORDERED to file a status report within 10 days from the date of this order stating whether Mr. Torres has been granted bond and, if his request for bond was denied, the reasons for that denial.

Signed March 23, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge